No. 2381

Second Circuit

ISAAC LUCAS v. MRS. E. M. PEART

(February 8, 1926, Opinion and Decree)

(Syllabus by the Court.)

1. Louisiana Digest—Automobiles—Par.—4. 4 (a), 4 (d).

A person who drives an automobile on the wrong side of the road and thereby compels another automobile approaching on the proper side of the road to take the ditch to avoid a collision and who a minute or two later, with four feet of the gravelled road to the right of his right wheel, while travelling at a high rate of speed, runs into a truck that was either not moving or moving only slowly without seeing the truck was guilty of negligence and responsible for all damages caused by the collision.

Appeal from the Thirteenth Judicial District Court of Louisiana, Parish of Rapides, Hon. Leven L. Hooe, Judge.

George J. Ginsberg, of Alexandria, attorney, for plaintiff, appellant.

Thornton, Gist and Richie, of Alexandria, attorneys for defendant, appellee.

STATEMENT OF THE CASE

REYNOLDS, J. Plaintiff sues defendant for $227.40, damages alleged to have been done to himself and his automobile in a collision between his automobile and a truck belonging to defendant on September 25, 1924, on a public highway south of Alexandria.

He alleges that the collision was due to the negligence of the driver of defendant's truck.

Defendant denied that the driver of her truck was negligent and alleged that the collision was caused solely by plaintiff's own negligence and she reconvened for the sum of $50.00, damages alleged to have been done to her truck in the collision.

The District Court rendered judgment rejecting the demands of both plaintiff and defendant. The plaintiff appealed and the defendant has answered the appeal and asked that her reconventional demand be allowed.

OPINION

It is established that there was a serious and dangerous collision between plaintiff's automobile while it was being driven by himself and defendant's truck while it was being driven by her son, and the only question to be decided is, whose fault was responsible for the accident.

Plaintiff swears, positively, that he was driving at a rate of speed not exceeding twenty miles an hour and on the extreme right hand side of the road in the direction in which he was going.

Defendant's testimony, on the contrary, is as follows:

S. E. Peart testified, page 17:

"Q. Just tell how that accident occurred?
"A. Well, I was coming out of the field down there with a lot of wood, and was coming and turned down the road, and my uncle opened the gate for me, and there was a car or two stopped, and when I started to pull out I seen this car coming, and the car was coming so fast that it ran right on me before I had time to do anything, and I threw on my brakes; my car was coming on an angle in the center of the road, and he came right straight on up and run his front wheel, I suppose, into my left front wheel * * *."

*　*　*

"Q. In what part of the road was your car when Dr. Lucas' car struck you?
"A. Near the center of the road.
"Q. In what direction were you turning?
"A. Turning to the right to go down the river.

*　*　*

"Q. In what part of the road was Mr. Lucas driving?
"A. Near the right side of the road, near the right hand side of the road, near the middle of the road; and he was driving so fast until when he turned around if he

had swung or pulled over a foot further, he would have missed me entirely.

"Q. Did he slow down any at all?
"A. No, sir, not a bit in the world, only when his car turned over.

Page 18:

"Q. How fast was he running?
"A. Just as fast as a Ford car could go.

* * *

"Q. Your wheel was turned at an angle, to turn down the road?
"A. Yes, sir."

J. B. Rowe testified, page 34:

"Q. Now, in what part of the road did the collision occur, Mr. Rowe?
"A. Well, as he came out he began to make his turn, and his left forewheel was possibly a little over the center of the road, leaving plenty of room for the car between him and ditch on the other side.
"Q. Was there ample room on the gravel part, between the front end of his car and the right side of the road?
"A. There was something like three or four feet between where he hugged the truck with his hub, and the far edge of the gravel to the right of the road. The marks of that would show for a week, many of us looked at it.

Page 44:

"Q. On what part of the road was Mr. Lucas driving?
"A. Right at the center of the road.
"Q. And if he had been on the extreme right of the road he could have passed without hitting the truck?
"A. Yes, sir."

Kit Hathorn testified, page 57:

"Q. Mr. Hathorn, do you remember the occasion of the collision between the truck belonging to Mrs. E. M. Peart and the car of Mr. Lucas?
"A. Yes, sir.
"Q. Where were you that day?
"A. I was coming to Alexandria. I was hauling seed with a truck, and I met this man down below Mrs. Peart's house.
"Q. About how far the other side of where the accident occurred?

"A. About three-quarters of a mile I guess.
"Q. State to the court how he was driving at that time, Mr. Hathorn? With reference as to whether he was running fast or slow, and what part of the road he was on?
"A. Well, when I met him, he was on my side of the road; he was driving very fast and he didn't seem to see me; I had to get in the ditch and I drove over as far as I could and turned over and stopped.
"Q. About how fast was he running at that time?
"A. I don't know but I know that he was running fast for a Ford."

H. H. Peart testified, page 43:

"Q. After the accident occurred, did you shut his motor down?
"A. Yes, sir.
"Q. And how wide open was the spark lever and the gas lever?
"A. They were pulled down, as far down as they would go. It was wide open.
"Q. Just how did the accident happen Mr. Peart?
"A. Well, I really can't tell you exactly how it happened but I saw him coming up the road at a high rate of speed, and my brother was about the middle of the road, making a turn, and he came along and locked his wheel and it shoved it around and it caused a dent in the car. He was right in the center, at the center, of the road, and when he went to make a turn he just caught that other wheel. He was going very fast; if he had stayed on the right side of the road he could have passed, but I don't think that he saw it."

E. E. Peart testified, page 18:

"Q. Was anything said to Mr. Lucas at that time after he got out from under the car, about the wreck?
"A. My uncle asked him why he didn't go slow down. He saw him as he was standing on the ground and he tried to flag him, and he told us that he didn't see us at all."

From all the evidence we are convinced that Mr. Lucas' extremely fast driving and failure to keep on the extreme right hand side of the road in the direction in which

he was driving was the proximate cause of the accident and that he is responsible for all damages resulting from the collision.

The evidence as to the amount of damages suffered by defendant is very meager. We cannot base a judgment for damages on testimony dealing with items of damage *in globo*. The only evidence fixing with any degree of certainty any damage suffered by defendant is found in the testimony of S. E. Peart, page 54, who testified that the damages were as follows: a wheel, $3.50, a casing, $8.50, and an inner tube, $2.25, making a total of $14.25. For this amount defendant is entitled to judgment in reconvention.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be amended by allowing defendant judgment in reconvention against the plaintiff for the sum of fourteen and 25-100 dollars with legal interest thereon from judicial demand and that in all other respects the judgment of the lower court be affirmed.